The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner William C. Bost and the briefs before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications and revisions of the Conclusions of Law.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to the N.C. Worker's Compensation Act.
2. An employee/employer relationship existed between the named employee and the named employer.
3. The employer, Winn-Dixie Charlotte, Inc., is self-insured and Crawford and Company is Winn-Dixie's third party-administrator.
4. Employee's average weekly wage is $90.00.
5. The employee sustained an injury on or about December 30, 1992.
6. The injuries sustained by the Plaintiff on December 30, 1992 arose out of and in the course of Plaintiff's employment and are compensable.
7. The various medical records and other documents which are made a part of the pre-trial agreement in this case have been stipulated into evidence. The parties have also stipulated into evidence the deposition transcript of Dr. Mark Marchese on September 28, 1995 and the deposition transcript of Dr. Dennis Payne on October 10, 1995.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. On December 30, 1992, the Plaintiff/Employee was working as a deli worker at the Winn-Dixie store located in Granite Falls, North Carolina. At the time of her injury, the Plaintiff had been averaging approximately twenty hours each week. The job required Plaintiff to wait on customers, slice meats and cheeses, lift bread and cookie pans weighing as much as twenty to twenty-five pounds, and some bending to wash the work area.
2. On December 30, 1992, the Plaintiff sustained an injury by accident when she was returning from getting several cans of soft drinks and tripped on a box in one of the vacant check-out lanes. Plaintiff fell and landed on her hip and the right side of her body.
3. At the time of the injury, the Plaintiff was sixty-two years of age and had been working at Winn Dixie for approximately 3 1/2 months.
4. In a medical questionnaire signed by Plaintiff and submitted to Winn-Dixie three months before her December 30, 1992 fall, Plaintiff indicated that she either had or had previously suffered from the following medical problems: difficulty breathing, high blood pressure, diabetes, nervous condition, pain in joints; persistent fatigue, arthritis, and varicose veins or leg ulcers.
5. At the time Plaintiff came to work for Winn-Dixie in September of 1992, she was already working as a resident property manager for an apartment complex. Despite her injury at Winn-Dixie on December 30, 1992, Plaintiff continued to work as a resident property manager at the apartment complex even while she was out of work at Winn-Dixie. Plaintiff continued with her regular employment as a resident manager at the apartment complex until voluntarily leaving her employment in November of 1994.
6. Following her injury of December 30, 1992, Plaintiff received treatment from Dr. John McCormick, an orthopaedist with Caldwell Orthopaedic Associates in Lenoir, North Carolina.
7. Upon his initial examination of January 12, 1993, Dr. McCormick noted the Plaintiff had sustained bruising around the lateral joint line of the right knee, tenderness and pain in her right hip and noted the Plaintiff had experienced some pain in her right thumb as a result of her pre-existing osteoarthritis. Plaintiff had minimal complaints relative to the back at the time of her examination two weeks after the accident. X-rays of the Plaintiff's pelvic region were negative and no significant acute injury was noted in the examination. Dr. McCormick did not expect any permanent or partial disability as a result of her injury and released the Plaintiff to return to work on January 20, 1993.
8. Dr. McCormick treated Plaintiff periodically over the next several months. On March 29, 1993, Dr. McCormick noted Plaintiff's general malaise and tiredness and suspected that she might have hypothyroidism.
9. Dr. McCormick referred Plaintiff to Dr. Nancy Morgan of Caldwell Family Physicians in Lenoir. Dr. Morgan initially examined the Plaintiff on April 15, 1993, noting that she was first diagnosed with diabetes and hypertension in 1980. Dr. Morgan also noted that Plaintiff had not had her blood sugar checked in three years. Dr. Morgan assessed that Plaintiff probably had fibromyalgia post trauma, diabetes under an uncertain degree of control, and hypertension. Dr. Morgan allowed her to return to light duty employment.
10. Dr. Morgan saw Plaintiff again on April 29, 1993. In her assessment of the Plaintiff, Dr. Morgan found that Plaintiff had minimal fibromyositis with some improvement and diabetes that was not well controlled. Dr. Morgan informed Plaintiff that "fibromyositis can be a complication of trauma, but it can also occur in the absence of trauma or solely in the presence of stress." None of Dr. Morgan's reports after this date mention any diagnosis of fibromyalgia.
11. On May 26, 1993, Dr. Morgan noted that Plaintiff continued to complain of experiencing pain, and that Plaintiff "remains adamant that she was not able to return to work." Dr. Morgan found that Plaintiff's diabetes was "under an uncertain degree of control," and arranged for the Plaintiff to undergo an MRI of her cervical spine.
12. On June 3, 1993, Dr. Morgan released the Plaintiff to resume her regular duties at work after receiving a negative MRI showing no ruptured discs or neurological impairment.
13. On June 7, 1993, Dr. Morgan reported the results of the cervical MRI over the phone to the Plaintiff. Dr. Morgan noted that Plaintiff was irate that she had been released to resume her work. Dr. Morgan informed the Plaintiff that she did not have any medical explanation for her continuing complaints.
14. On June 28, 1993, Plaintiff was seen again by Dr. Morgan complaining of weakness after working a single 8 hour shift at Winn-Dixie. Dr. Morgan requested that the Plaintiff get a glucometer to measure her blood sugar level and told her that if she was having any weakness, it was probably because of her poorly controlled diabetes. Dr. Morgan wrote a medical note reducing Ms. Rolon's work scheduled to no more than 4 hours per day to allow her to undergo physical therapy for muscular strength and to be re-evaluated in two weeks.
15. Plaintiff was hired as a part-time employee and usually worked four to five hour days for an average of twenty hours per week.
16. Defendant had four hour per day employment available to Plaintiff following her June 28, 1993 note from Dr. Morgan, but the Plaintiff reported to work only once following June 28, 1993, and had no contact with defendant to determine her work schedule.
17. Plaintiff was eventually released from Winn-Dixie on July 7, 1993 for her failure to report to work.
18. Dr. Morgan saw Plaintiff again on September 30, 1993 and noted that the Physical Therapist working with Plaintiff found generalized weakness in both upper extremities and submaximal effort. Plaintiff brought Dr. Morgan a lengthy article about fibromyositis, yet Dr. Morgan maintained her opinion that Plaintiff's generalized weakness was not a result of her fall.
19. The Plaintiff saw Dr. Mark Marchese, a neurosurgeon practicing in Hickory, North Carolina, beginning on January 27, 1994. Dr. Marchese's examination of Plaintiff revealed normal strength in both arms, normal reflexes in the upper extremities and no significant sensory abnormalities in her upper extremities. The examination of Plaintiff's lower extremities found mild weakness in certain muscle groups of the legs, but found the remainder of her strength to be normal.
20. Upon review of the MRI of her neck Dr. Marchese found some degenerative and arthritic changes between the fourth and the fifth cervical levels and that Plaintiff had a very minimal disc bulge between the fifth and sixth vertebrae.
21. Dr. Marchese found that Plaintiff's injuries at Winn-Dixie amounted to nothing more than a mild lumbar strain.
22. In Dr. Marchese's opinion, very little of Plaintiff's complaints are related to the fall at Winn-Dixie and the great majority of her complaints are due to an underlying diabetic neuropathy, and a possible exacerbation of that diabetic neuropathy perhaps due to some stressful event, whether it be the fall or other factors in her personal life, and degenerative disc disease in her neck and lower back.
23. In his deposition, Dr. Marchese stated that Plaintiff did not suffer from fibromyalgia and that regardless of her injury at Winn-Dixie, she was not healthy enough to be doing a lot of manual labor due to her age and general physical condition.
24. Dr. Marchese also related that another neurologist, Dr. Boyles, agreed that Plaintiff had diabetic peripheral neuropathy as a result of nerve conduction studies that were conducted on Plaintiff's lower extremities. Dr. Marchese provided the Plaintiff with an overall 3% permanent partial disability rating of the back, but stated that to come up with 3% rating he was "stretching" and that he would give 3% rating only if "I believed everything I was told". Dr. Marchese stated that 1 1/2% of her permanent partial disability rating was attributable to the problem she suffered after the fall at Winn-Dixie.
25. Dr. Marchese also noted that Plaintiff should seek a more sedentary or clerical type job if she wished to be employed at this time. However, Dr. Marchese stated "I don't think that really is a result of her fall".
26. Plaintiff was also treated by Dr. Michael Lewis from April to July of 1994. In his examination of April 25, 1994, Dr. Lewis stated that Plaintiff's blood sugar reading was 362, and the Plaintiff reported the levels have always been quite high. Dr. Lewis stated that "apparently she wanted me to tell her that the symptoms are related to a fall. I think they are much more likely related to the diabetes."
27. After June 28, 1993, Plaintiff had been released to return to her regular job and work was available to her on the same basis as prior to the compensable accident. Plaintiff's disability, if any, after June 28, 1993, was caused by her diabetic condition and was not causally related to the injury by accident on December 30, 1992.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The Plaintiff sustained a compensable injury on December 30, 1992, for which she has already received worker's compensation benefits. N.C. Gen. Stat. § 97-2 (6); 97-29.
2. Plaintiff is not entitled to receive any additional temporary total disability compensation since she regained her wage earning capacity as of June 28, 1993 and any disability after that date was not causally related to the compensable injury by accident. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to receive compensation at the rate of $60.00 per week for 4.5 weeks for the 1.5% permanent partial disability she sustained to her back as a result of the compensable injury by accident. N.C. Gen. Stat. § 97-31 (23).
4. Plaintiff is entitled to payment by Defendant of all medical expenses arising from this injury by accident. N.C. Gen. Stat. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay compensation to the Plaintiff for her 1 1/2% permanent partial disability of the back at the rate of $60.00 per week for four and one half weeks.
2. An attorney's fee in the amount of 25% of the compensation awarded herein is hereby approved for Plaintiff's counsel which fee shall be deducted from the aforesaid award and be paid directly to Plaintiff's counsel.
3. Defendant shall pay all medical costs as approved by the Commission.
 S/ _________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _________________ COY M. VANCE COMMISSIONER
S/ _________________ J. RANDOLPH WARD COMMISSIONER
LKM/bjp